## AFFIDAVIT IN SUPPORT OF FORFEITURE COMPLAINT

I, Daniel R. Jones, hereby state as follows:

1.  I am a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C.§ 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 21 U.S.C. I am and have been a Task Force Officer of the United States Department of Justice, Drug Enforcement Administration (DEA) at the Paducah Post of Duty since December 2018. I am employed by the Kentucky State Police and am currently assigned to the Drug Enforcement/Special Investigations West Branch (hereinafter DESI). I have been assigned to DESI since January 2016. I have been employed as a sworn Law Enforcement Officer since March 2005 having received my law enforcement certification from the Kentucky State Police Academy at that time.

2.  Of my approximately 18.5 years as a sworn officer approximately 7.5 of those years have been as a narcotics detective. I have overseen or been involved with numerous drug investigations and have assisted or managed controlled purchases of narcotics. I have participated in many hours of surveillance consisting of both physical and electronic observation. I have experience working drug investigations including those involving the diversion of prescription drugs. I also have experience investigating the medical practitioners who are prescribing the controlled substances and the pharmacists that distribute the controlled substances.

3.  I have attended numerous classes relative to drug identification, trends, investigations, asset removal, undercover operations, clandestine operations and manufacturing, surveillance techniques, selective drug enforcement, drug intelligence techniques vehicle concealment and confidential information management. In connection with my official DEA duties, I investigate criminal violations of state and federal firearms and narcotics laws, including, but not limited to violations of 18 U.S.C. §§ 922, et seq. and 21 U.S.C. §§ 841, et seq. I have received specialized training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. I have also has been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking. This affidavit is based upon my personal knowledge, as well as information reported to me by other senior special agents, federal and local law enforcement officers and others with knowledge of the facts surrounding this case. I have participated in numerous long-term federal and state investigations that led to the execution of multiple search warrants for said violations. The investigations routinely utilize numerous confidential informants, as well as undercover agent/officers, to conduct their investigation.

4.  During my career, I have conducted or participated in numerous controlled substance investigations, including conspiracies to distribute controlled substances (21 U.S.C. §846), and the manufacture and possession of controlled substances with the intent to distribute (21 U.S.C. §841). These investigations targeted large scale drug trafficking organizations engaged in the sale, manufacture, importation, and distribution of heroin, methamphetamine, cocaine, marijuana, and other controlled substances. During the course of

my work, I have had the opportunity to converse with admitted and known drug traffickers as to their methods, and those of their associates, regarding the manufacture, importation, transportation, distribution and sales of controlled substances, as well as their methods used to conceal, transport, and launder cash and/or other types of drug proceeds. I have become very knowledgeable in the methods used by drug traffickers to import, conceal, transport, distribute, manufacture, and sell controlled substances, as well as their methods used to conceal, transport, and launder cash and/or other types of drug proceeds. These methods have also included the use of electronic devices, cellular telephones, computer applications, chat and texting applications, social media, the world-wide web, and even the "dark web" a highly compartmentalized and often anonymous layer of the world-wide web. It is quite common for today's drug traffickers to utilize the internet, cellular phones and electronics, and social media to help facilitate their drug trafficking and money laundering activities, especially since today, a great deal of illegal narcotics and substances are purchased and paid for via the world-wide web utilizing smart phones and computers. A great deal of drug trafficking is trans-national today due to the use of the world-wide web, computers, and smart cellular phones

    5.  I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from my discussions with witnesses involved in the investigation; and from my review of records relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed.

Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient reasonable and probable grounds to believe that the money seized from Anthony CATLETT constitutes proceeds traceable to narcotics trafficking, intended for narcotics trafficking, used or intended to be used to facilitate narcotics trafficking in violation of 21 U.S.C. § 841.

**FACTS OF THE CASE**

7. In early 2023, an investigation into the drug trafficking activities of Melvin BROWN of Hopkinsville, KY was initiated by members of the DEA Paducah and Bowling Green Posts of Duty (POD). By utilizing multiple investigative techniques as well as DEA Confidential Sources, it was soon learned that Anthony CATLETT, of Hopkinsville, KY, was also heavily involved in narcotics trafficking with BROWN and others.

8. On February 8, 2023, members of the Paducah and Bowling Green POD's utilized a DEA CS to conduct a controlled purchase of approximately 9 ounces of cocaine from Melvin BROWN. Using both electronic and physical surveillance, Special Agents and Task Force Officers were able to observe BROWN leave his residence and travel directly to the residence of Anthony CATLETT located on Central Avenue in Hopkinsville, KY (address known but omitted herein). After remaining at CATLETT's residence for a short time, BROWN was observed traveling directly to meet with the DEA CS and complete the transaction.

9. During the debriefing of a reliable DEA CS, CATLETT was named as a mid to upper level cocaine trafficker in Hopkinsville. The CS stated that he / she had purchased cocaine from CATLETT on multiple occasions and the transactions always took place at his residence on Central Avenue. The CS stated that he / she was aware that CATLETT would purchase 5-10 kilograms of cocaine at a time from his source. The CS also advised that CATLETT was a large-scale marijuana trafficker as well.

10. On February 21, 2023, members of the Paducah and Bowling Green POD's and other state and local agencies executed a federal search warrant at the residence of Anthony CATLETT on Central Avenue in Hopkinsville, KY (warrants were executed at other locations associated with BROWN and CATLETT's drug trafficking activities). CATLETT was removed from the residence and secured in the back of a Kentucky State Police cruiser.

11. After being read the Miranda warning, CATLETT advised he would speak to Hopkinsville Police Department Detective Keith Flick and DEA Paducah POD Task Force Officer Daniel Jones. During the interview, CATLETT stated that he believed there to be approximately 2 pounds of marijuana in his residence as well as approximately $40,000.00 to $50,000.00 in U.S. currency. When questioned about the presence of methamphetamine, cocaine or fentanyl, CATLETT stated he was certain that none would be located inside. Soon after, CATLETT advised he did not wish to speak to investigators any further and the interview was terminated.

12. Multiple items of evidence were seized and/or photographed during execution of the warrant. The items seized indicate clear evidence of drug trafficking activities. Investigators seized a large amount of marijuana in vacuum sealed bags as well as Ziploc style bags. Also seized was a total of $139,728 in U.S. Currency (which was packaged in a manner

consistent with drug trafficking proceeds). Of the seized currency, a very large amount of U.S. currency was located inside the oven in the kitchen sitting side by side with a large amount of marijuana in a vacuum sealed bag. Also in the kitchen, investigators located a glass jar filled with loose U.S. currency with small plastic bags containing marijuana and drug paraphernalia sitting directly next to each other on the counter. Investigators also located a vacuum sealer and bags on the counter. Also of note was the discovery and seizure of a money counter and an apparent drug ledger, which contained dollar amounts and names of individuals CATLETT had presumably conducted narcotics transactions with. Finally, in the kitchen, investigators located a green medicine bottle containing a clear plastic bag with a white powder substance inside. This exhibit was transported to the Kentucky State Police Madisonville lab for analysis. TFO Jones spoke with an analyst at the lab who stated that substance had been positively identified as Fentanyl, with a gross weight of approximately 28.277 grams.

13. DEA began an administrative forfeiture proceeding against $139,728.00 in United States Currency from CATLETT's residence and sent notice to CATLETT. CATLETT filed 2 claims on or about May 22, 2023—in one, he claimed only $92,500 of the $139,728.00 seized. In the other claim he claimed $16,860.00 that was seized at another search location. DEA rejected the $16,860.00 claim and sent notice to his counsel William Butler to re-submit the claim. The claim was not re-submitted.

14. In support of his sworn claim, CATLETT stated that "I earned the bulk of this cash from my auto dealership, AC Automotive, LLC. I also have rental property. My property's 2 year lease ended in 10/22. The rent was $600.00 per month. Additionally I sold my motorcycle for $10,000." In support of his claims, CATTLETT attached a spreadsheet

that he said was "compiled by my accountant from 10/1/2018 to 2/1/2023." The spreadsheet had no identifying information and purported to be sales from January 1 2018-February 1, 2023—which total $1,095,614.57, $869,578.75 of which were labeled cash sales. For the over 5 years of purported sales, the projected profit was listed as $235,201.12. He did not attach any state or local tax returns in support of his claim. He also attached a purported lease, and a copy of a document containing a VIN number of a Harley Davidson motorcycle from Texas listed in an insurance company's name (with a handwritten note that he sold the motorcycle in 2022 for $10,000).

15. On August 10, 2023, TFO Daniel Jones spoke with a Kentucky State Police DESI West intelligence analyst regarding CATLETT's reported wages, and according to their query, CATLETT had no reported wages between 2019 to present. As previously mentioned, CATLETT owns AC Automotive LLC an automotive dealership in Hopkinsville A query of CATLETT's name revealed that the only vehicle registered to him was a 2003 Kawasaki motorcycle with expired tags (no Harley Davidson registration in his name could be found). During a debrief with a reliable DEA CS, he / she stated that CATLETT does not actually sell vehicles through AC Automotive and indicated he was using it as a "front" for his drug trafficking activities.

16. On May 12, 2010, CATLETT plead guilty to marijuana possession in Christian Circuit court, and was sentences to twelve months in jail with twelve months suspended and five years supervised probation. Melvin BROWN has pending federal charges of Drug Conspiracy, Money Laundering and Use of a Communication Facility in Committing, Causing and Facilitating the Commission of a Drug Trafficking Felony in the Northern District of Oklahoma.

Exhibit A-7

## CONCLUSION

There is probable cause to believe that the defendant property listed above and in the Complaint is subject to forfeiture to the United States, as proceeds directly and indirectly traceable to drug trafficking in violation of 21 U.S.C. § 841 et seq. (both facilitating and proceeds thereof), and proceeds intended to be furnished in exchange for controlled substances. Consequently, the property is subject to forfeiture under 21 U.S.C. § 881(a)(6).

Respectfully submitted,

Daniel R. Jones
Task Force Officer
Drug Enforcement Administration